VINCENT C. HICKSON et al., Respondents, v. MRS. L. B. GRAY et al., Appellants.

William Ellis Lady and John D. Gray for Appellants.

Louis C. Spiess, Jr., for Respondents.

McCOMB, J.—From a judgment in favor of plaintiffs after trial before the court without a jury in an action to recover secret profits obtained by defendants while acting as agents for the sale of property of plaintiffs, defendants appeal.

The evidence being viewed in the light most favorable to plaintiffs (respondents) the essential facts are these:

In November, 1945, plaintiffs were the owners of certain parcels of real property known as 602 and 608 South New Hampshire Street, Los Angeles, hereinafter designated as Parcels 1 and 2, respectively. All the plaintiffs were represented by Mr. Vincent C. Hickson.

On or about the 18th of November, 1945, Ruth Denmead became interested in the purchase of Parcel 1, and made this fact known to defendants. Defendant Gray, a licensed real estate broker, immediately procured a listing of the property from Mr. Hickson as the representative of all the owners. Shortly before November 22, 1945, Mrs. Gray called upon Mr. Hickson at his office relative to Parcel 1, at which time she learned that plaintiffs owned Parcel 2 and the properties had been listed with two brokers, Parcel 1 being listed for $23,500 and Parcel 2 for $17,500.

Mrs. Gray requested a listing of both parcels which was refused by Mr. Hickson as the previous listing had not expired. He told her that if she had a purchaser she might submit an offer and he would consider it, although he was satisfied that the properties should bring more than $41,000.

On November 26, 1945, Mrs. Gray telephoned Mr. Hickson to say she had the property sold for $41,000 which was the best offer she could get, and requested the privilege of coming to see him the next day and bringing with her Mrs. Tate who worked with her on real estate deals. On November 27, 1945, defendants called at Mr. Hickson's office, informing him they had the properties sold for $41,000 to a "May D. Corson," and such sum was the best that could be obtained. Mr. Hickson expressed his disappointment that the properties could not be sold for a larger sum. He gave Mrs. Gray a listing of Parcel 1 for $24,000 and Parcel 2 for $17,000, the name of May D. Corson, 440 South Ardmore, being inserted as purchaser according to instructions given by Mrs. Gray in the presence of Mrs. Tate.

Mr. Hickson handed the listings to Mrs. Gray, instructing her to get May D. Corson to sign them. On November 28, 1945, Mrs. Gray telephoned Mr. Hickson from the Wilshire Escrow Company office stating that May D. Corson would not be the purchaser as she could not get the money together, but Mrs. Kelley would be the purchaser on the same terms. Mr. Hickson voiced his disappointment at not getting more for the property but agreed that it might be sold to Mrs. Kelley. He made an

adjustment however on the prices, asking $22,000 for Parcel 1, and $19,000 for Parcel 2. Mrs. Tate assured him that this would not make any difference to the purchaser.

About 5 p. m. the same afternoon Mrs. Gray and Mrs. Tate returned to Mr. Hickson with the listings. On each of the listings a line had been drawn through the name of May D. Corson, and in lieu thereof had been inserted "Emma Virginia Kelley," and the address 153 South Irving Boulevard, which was signed by Emma Mary Kelley as the purchaser and Louise B. Gray as agent.

Again Mr. Hickson stated that he was disappointed he could not get more than $41,000 for the property. He was reassured by Mrs. Gray and Mrs. Tate that it was a good deal; that no more could be obtained; to which Mr. Hickson replied, "All right, I am relying on your judgment in the matter." They did not tell him that Parcel 1 had been sold to Ruth Denmead for $28,000, and Parcel 2 to Mrs. Umber for $21,500.

At the close of the escrow Mr. Hickson received a statement showing that the properties had been sold for $41,000 and an agent's commission paid thereon of $2,050; $1,300 of which was paid to Mrs. Gray and $750 to Mrs. Tate. Emma Mary Kelley who signed the listings as purchaser was in fact the daughter of Mrs. Gray whose married name was Mrs. Spencer Smilie.

This is the sole question presented for our determination:

*Did defendants while acting in a fiduciary capacity toward plaintiffs make and receive a secret profit by perpetrating a fraud upon them?*

This question must be answered in the affirmative and is governed by these rules:

1. An agency may be implied from the conduct of the parties. (*Anderson* v. *Thacher,* 76 Cal.App.2d 50, 65 [172 P.2d 533].)

2. If the evidence establishes a fiduciary relationship between plaintiff and defendant wherein defendant is agent for plaintiff the same obligation devolves upon defendant of undivided service and loyalty that is imposed upon a trustee in favor of his beneficiary. (*Rattray* v. *Scudder,* 28 Cal.2d 214, 222 [169 P.2d 371, 164 A.L.R. 1356].)

3. If through fraud and conspiracy another person assists a real estate broker in violating his fiduciary obligation to his principal by making a secret profit and retaining the proceeds therefrom, he, as well as the fiduciary, is equally liable for all consequences of the fraud and conspiracy re-

gardless of the extent of his participation or the share of the profit he has obtained. (*Anderson* v. *Thatcher, supra,* 72.)

 Applying the above stated rules to the facts of the present case it is evident that Mrs. Gray was the agent of plaintiffs for the sale of their properties, and that she, assisted by Mrs. Tate, violated her fiduciary obligation to plaintiffs in not disclosing to them that their properties could be sold and in fact were being sold by her for a price in excess of $41,-000. Therefore Mrs. Gray was liable to plaintiffs for the amount of the secret profits which she had obtained in the transaction, and Mrs. Tate, under rule 3, *supra,* was also liable since she had assisted Mrs. Gray in perpetrating the fraud.

The judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for rehearing was denied May 31, 1949, and appellants' petition for a hearing by the Supreme Court was denied June 30, 1949.

[Civ. No. 16893. Second Dist., Div. Two. May 6, 1949.]