[Civ. No. 25222.   Second Dist., Div. One.   Oct. 17, 1961.]

J. C. PEACOCK, INC. (a Corporation), Respondent, v.
JOHN H. HASKO et al., Appellants.

Ralph W. Evans and Guy Richards Crump for Appellants.

Danielson & St. Clair and Deryl D. Shumway for Respondent.

LILLIE, J.—This appeal is from the judgment in the "fraud" case referred to in the companion appeal *ante*, p. 353 [16 Cal.Rptr. 518] (No. 24714) this day decided. Sought to be recovered were secret profits realized from the operation of defendant Pacific Aircraft Products, the creation of which company (as pleaded in the "bonus" case) assertedly resulted from a conspiracy among the various individual defendants to cheat and defraud plaintiff in the subcontracting of work to that partnership. Unlike the remaining individual defendants, Sanchez and Hinman were not employed by plaintiff; however, they are said to be jointly and severally liable for the profits of the operation because they knowingly joined an agent or fiduciary in an enterprise where the agent's interest was adverse to his trust. (*Anderson* v. *Thacher*, 76 Cal.App. 2d 50 [172 P.2d 533].)

Trial proceeded upon plaintiff's third amended complaint. Count one thereof, which set forth the conspiracy, was for recovery of the reasonable value of the cost to plaintiff of completing work that the partnership had contracted to do; count two involved the conversion of small tools; and count three was one for money had and received. As in the "bonus" case, cross-complaints were filed by certain defendants for salaries unpaid and other relief. A Los Angeles attorney was appointed as referee to ascertain the net profits realized out of defendant's transactions with plaintiff; his report was in due course approved by the trial court. Judgment against the defendants in varying amounts was subsequently rendered; no relief was given the cross-complainants on their cross-demands.

The principal claim on this appeal is to the effect that the entire action is a complete nullity because it was originally filed under the name of J. C. Peacock Machine Company, which corporation had been merged with J. C. Peacock, Inc., prior to the filing of the action. There is no dispute as to the fact and time of this merger; they were previously considered by this court on the appeal from the order refusing to discharge a writ of attachment issued at the instance of respondent. (184 Cal.App.2d 142 [7 Cal.Rptr. 490].) In January of 1953, J. C. Peacock Machine Company became a constituent corporation of a merger whereby J. C.

Peacock, Inc. (respondent herein) became the surviving corporation. The present action was filed in August of 1953 by J. C. Peacock Machine Company as plaintiff. None of the officers of either corporation learned of the merger until some time in 1954—Mr. Peacock was the president and principal stockholder of both corporations. Upon discovery of the merger, a certificate of doing business under the fictitious name of J. C. Peacock Machine Company was executed by J. C. Peacock, Inc., and duly published and filed. Also, after discovery of the merger, the trial court, upon notice, made its order permitting respondent to correct the name of plaintiff.

Appellants point to the result reached on the previous appeal (*supra*, 184 Cal.App.2d 142) and argue that it is determinative of the present question. The opinion on the prior appeal by no means went that far, being limited to the sole issue there presented, namely, the validity of the writ of attachment. Thus, at page 152 it was stated: "The fact that the trial court, during the trial, permitted plaintiff to file a third amended complaint, wherein the caption was changed to J. C. Peacock, Inc., an existing entity, did not cure the defect *in the original attachment*" (emphasis added). Continuing, "The defect was still present *in the affidavit of attachment, the undertaking on attachment*, and finally, *the writ and alias writ of attachment*" (emphasis added). Further, "It must be apparent that in effect there was no undertaking or bond. The undertaking signed by Hartford Accident and Indemnity went to J. C. Peacock Machine Company, a corporation, which did not exist." Thereafter it was observed that "It may well be that the writs of attachment, the affidavit and the undertaking could have been amended by substituting the proper party and thereby Hartford could have determined whether to accept or reject the substituted party and whether to write the bond *but this was not done*" (emphasis added). We might have gone on to say that "attachment is a harsh remedy at best in that an alleged debtor loses control of his property before the claim against him has been adjudicated. This being so, the provisions relating thereto should be strictly construed." (*Barceloux* v. *Dow*, 174 Cal.App.2d 170, 174 [344 P.2d 41].)

Attachment being a remedy auxiliary to an action at law, "[n]either the action nor the judgment, under our law, in any manner depends upon the attachment, although the attachment depends upon the action. The judgment in the case is precisely the same, whether the attachment is dissolved or

not.'' (*Allender* v. *Fritts*, 24 Cal. 447, 448.) Formerly it was provided by section 558, Code of Civil Procedure, that a writ of attachment improperly or irregularly issued ''must'' be discharged upon a satisfactory showing to that effect—no provision was made for any amendment to the undertaking. Before the 1909 amendment permitting such amendment, the respondent in *Tibbet* v. *Tom Sue* (1898), 122 Cal. 206 [54 P. 741], asked the privilege of amending the undertaking, invoking the provisions of section 473, Code of Civil Procedure, whereby amendments are allowed in furtherance of justice. The court held that the statute, as then specifically worded, limited and controlled the general provisions of section 473. On the former appeal (*supra,* 184 Cal.App.2d 142) the respondent (likewise respondent here) similarly invoked the provisions of section 473; but the argument in no wise went to the undertaking which, as noted above, was never amended, and the decision of this court did not turn on that point. We repeat that appellants have read into our former opinion certain conclusions that simply are not there.

In the present matter, however, we are confronted with an amendment accomplished in due course pursuant to court order after proper notice. In support of that order we are again referred to the language of section 473 (Code of Civ. Proc.) : ''The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, *or by correcting a mistake in the name of a party, or a mistake in any other* respect'' (emphasis added). This section has always been liberally construed. On the other hand, a motion to dismiss on the ground of incapacity of the plaintiff to sue is a plea in abatement, not favored in law and strictly construed. (*Maryland Cas. Co.* v. *Superior Court,* 91 Cal.App. 356, 361 [267 P. 169].) At least with respect to the statute of limitations, ''the allowance of amendment and relation back . . . does not depend on whether the parties are technically or substantially changed; rather the inquiry is as to whether the nature of the action is changed.'' (Witkin, California Procedure, p. 1620.) It is not suggested that any change in the nature of the action resulted from the amendment here. Such was the situation in *Klopstock* v. *Superior Court,* 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318] where the court held the substitution of a party plaintiff to be proper. At pages 19-20, it said : ''We now come to the decisive question whether, after the reversal by the District Court of Appeal,

it was within the discretionary power of the trial court to permit the amendment of the complaint which, in effect, substituted the proper plaintiff in the action, i. e., Flora E. Short as administratrix of the estate of the deceased stockholder, Isaac Klopstock. Petitioners contend that since no cause of action was stated by the original complaint and since the decision on appeal inferentially held that a general demurrer on that ground should have been sustained, no course of action was open for the trial court but to dismiss the action. Code of Civil Procedure, section 473, provides: 'The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party . . .' The same section provides further, that the court may, in its discretion and after notice, allow 'an amendment to any pleading or proceeding in other particulars . . .' This statutory provision giving the courts the power to permit amendments in furtherance of justice has received a very liberal interpretation by the courts of this state. [Citations.] This position is clearly in accord with the modern theories of code pleading, which would permit amendment in the discretion of the court unless an attempt is made to present an entirely different set of facts by way of the amendment. [Citation.] . . . Of course, the court's power to permit amendments of pleading is not unlimited. It has generally been said that an amendment may not be permitted where the effect of such amendment is to state 'another and distinct cause of action.' [Citations.] But this court has said, 'it is obvious that the unqualified way in which the rule is sometimes stated—i. e., that a new or different cause of action cannot be introduced by amendment— cannot be accepted. For the most common kinds of amendments are those in which complaints are amended that do not state facts sufficient to constitute a cause of action; and in these, and often in the case of new parties, a new cause of action is in fact for the first time introduced. All that can be required, therefore (to use the language of Mr. Pomeroy), is that "a wholly different cause of action" shall not be introduced . . .' "

Appellants have endeavored to distinguish *Klopstock* and other cases cited by respondent on the theory that "Living people started these cases." They refer to section 4116 of the Corporations Code (relating to merger and consolidation), quoted in the prior opinion (*supra*, 184 Cal.App.2d 142, 151) and providing in pertinent part that " 'Upon merger . . .

*the separate existence of the constituent corporation ceases,*
. . . Any action or proceeding *pending* by or against any
constituent corporation may be prosecuted to judgment, which
shall bind the . . . surviving corporation, or the . . . surviving
corporation may be proceeded against or substituted in its
place.' '' We held that ''the exception referred to in the
aforementioned section is applicable only to *'pending'* actions
or proceedings,'' and we further stated that ''an action or
proceeding not yet begun cannot be initiated in the name of
the dead (constituent) corporation.'' Perhaps the use of the
word ''dead'' in the last-quoted sentence was unfortunate.
On the other hand, section 5400 of the Corporations Code,
enacted in 1929 and relating to winding up and dissolution,
provides in pertinent part: ''A corporation which is dissolved
by the expiration of its term of existence, by forfeiture of
existence by order of court, or *otherwise,* nevertheless con-
tinues to exist for the purpose of winding up its affairs,
*prosecuting and defending actions by or against it . . .*'' (em-
phasis added). There is this comment on the above 1929 change
in the governing law: ''The policy was adopted in 1929 of
providing for the continuation of the corporate existence
indefinitely for the purpose of winding up and settling the
affairs of corporations which had been dissolved, rather than
extinguishing the corporate existence and giving the admin-
istration of the surviving assets and liabilities to trustees.
Similar provisions are found in the statutes of New Jersey,
New York and Ohio. By these sections provision is made that
a corporation after dissolution, voluntary or involuntary, shall
nevertheless continue to exist for an indefinite period as a
legal entity for the purpose of winding up its affairs. It is
provided by the statutes of many states that dissolution of a
corporation shall not absolutely destroy its corporate capacity
but that it shall continue only for a limited period, such as
three years, for purposes of liquidation . . . Under the present
California Corporations Code, even after a final certificate or
order of dissolution, a corporation is not absolutely extin-
guished . . .'' (Ballantine & Sterling, California Corporation
Laws [1949 ed.], pp. 477-478.) Citing section 399 of the Civil
Code (now Corp. Code, § 5400, *supra*), it was accordingly
held in *Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335,
345 [182 P.2d 182], that the dissolution of a corporation does
not terminate its ability to enforce a contract for the delivery
of goods.

Appellants argue, however, that section 5400 (Corp. Code)

is not controlling: "To see what powers a corporation has upon merger, one must look to Corporations Code, Section 4116—not Section 5400." It is the usual result, and section 4116 so provides, that "[u]pon merger or consolidation . . . the separate existence of the constituent corporations ceases"; but it has been observed that the rule is not an invariable one: "Whether the extinction of the constituent corporations amounts to a technical dissolution has been questioned. In a limited sense, their existence may be regarded as continued in their successor." (Ballantine & Sterling, *supra,* p. 415.) *Mutual Bldg. & Loan Assn.* v. *Wiborg,* 59 Cal.App.2d 325 [139 P.2d 73], was decided in 1943; pertinent to the problem are these observations: "By virtue of the merger, the separate corporate existence of Title Guarantee suffered the fate of all merged corporations, to wit, they become a part of the muscle and the blood stream of the mergee corporation, transfusing into the mergee all its rights and privileges . . . Although the distinct corporate entity of Title Guarantee passed out of existence or became extinct upon the completion of the act of consolidation, its corporate activities did not cease but were continued and carried on through the new channel . . . The consolidation did not create an entirely new entity but 'merely directs the blood of the old corporation into the veins of the new, the old living in the new. [Citation.]' " (Pp. 328-329.) To us it seems apparent that the order of amendment here challenged was in effect the substitution of the real party in interest. (*Klopstock* v. *Superior Court, supra,* 17 Cal.2d 13, 21.) While the original complaint may not have stated a cause of action in J. C. Peacock Machine Co., the ultimate beneficiary of the action is J. C. Peacock, Inc. on whose behalf the same relief is sought against the defendants named. In the cases cited in *Klopstock,* the substitution in no wise changed the cause of action; the same liabilities were involved; and, what is most important, the defendants (appellants) were given a full opportunity to make a defense. Certainly the facts at bar are well within the general rule that "A substitution of parties plaintiff is permissible where it does not effect a change in the cause of action and where the party substituted bears a relation to the original plaintiff and to the action" (67 C.J.S., Parties, § 85b); in the light of the language used in the *Mutual Bldg. & Loan Assn.* case, *supra,* we can conceive of no closer "relationship" than that which obtained between the two companies here involved. The point presented is highly technical; to us it seems that substantial justice will

best be done by the result we reach as to this phase of the appeal.

Appellants next contend that the judgment against Pacific Aircraft Products for all of the profits realized on all of the orders received by it from respondent is without any legal support. As indicated at the outset of this opinion, respondent proceeded on the theory that one who knowingly joins an agent or fiduciary in an enterprise where the personal interests of the latter is adverse to his trust or agency becomes jointly and severally liable for the profits of the enterprise. Recovery on such theory is authorized on a common count for money had and received. (*Strutzel* v. *Williams*, 109 Cal.App. 2d 512 [240 P.2d 988].) In *Anderson* v. *Thacher*, 76 Cal. App.2d 50 [172 P.2d 533], plaintiff was given judgment in the full amount prayed, even though one of the two defendants acted merely as a dummy and received nothing for her part in the particular transaction. This court, speaking through Mr. Justice White, stated at page 72: "If through fraud and conspiracy other defendants assisted defendant Thacher in violating his obligation to his principal by making a secret profit and by retaining the proceeds therefrom, they, as well as the fiduciary Thacher, are equally liable for all the consequences of the conspiracy, regardless of the extent of their participation or the share of the secret profits obtained by them." In commenting on the liability of the defendant Johnstone, who received nothing from the scheme, the court stated at page 73: "That this defendant knowingly aided in furtherance of the design or scheme there can be under the evidence little if any doubt. She willingly permitted the use of her name in the dual escrow opened by defendants Thacher and Sackett in carrying out their design to defraud plaintiff." And on page 74: "As heretofore pointed out, the liability of a conspirator is not dependent on whether such conspirator receives any of the benefits of the conspiracy. By reason of the surreptitious and deceptive means resorted to by her co-defendants and in which defendant Johnstone willingly used her name, it cannot be said that the trial court's inference that she had knowledge of the conspiracy and its unlawful purpose was unreasonable."

Again, in *Hickson* v. *Gray*, 91 Cal.App.2d 684 [205 P.2d 420], there was presented the question of the liability of one who was not an agent by reason of his aiding and abetting the fraud of an agent; the court stated at pages 686-687: "If through fraud and conspiracy another person assists a real

estate broker in violating his fiduciary obligation to his principal by making a secret profit and retaining the proceeds therefrom, he, as well as the fiduciary, is equally liable for all consequences of the fraud and conspiracy regardless of the extent of his participation or the share of the profit he has obtained. [Citation.]''

It is also claimed that the judgment against the various defendants is unsupported by the findings[1] and the law. As discussed above, all parties who knowingly join a conspiracy wherein an agent is a coconspirator become jointly liable for the profits of the enterprise; too, ''Where several persons act in concert and damages result from their joint tort, each person is held for the entire damages unless segregation as to causation can be established.'' (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 433 [218 P.2d 17].) It is also argued that each appellant is liable only for the amount of profits received. The language and reasoning of *Anderson* and *Hickson* are dispositive of such claims, including the contention that it was incumbent on the court to find as to the respective interests of each partner in Pacific Aircraft. We further point out that count three of the complaint was for money had and received; where, as here, there is evidence that one party has money which in good conscience he should pay to another, the insured party may maintain an action on such common count. (*Strutzel* v. *Williams, supra,* 109 Cal.App.2d 512, 515.) See also *Mains* v. *City Title Ins. Co.*, 34 Cal.2d 580, 586 [212 P.2d 873].

For the reasons stated the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 14, 1961, and appellants' petition for a hearing by the Supreme Court was denied December 13, 1961.

---

[1]The reporter's transcript in this case encompasses more than 1900 pages. Appellants have not made reference to this transcript in support of their bare assertions that certain findings of fact are erroneous. There was a similar dereliction in the ''bonus'' case. In *Hickson* v. *Theilman,* 147 Cal.App.2d 11, 14-15 [304 P.2d 122], it is said: ''The first contention of defendants is that the findings are unsupported by the evidence. In this connection, we repeat what every lawyer should know, namely, that when an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.''