Filed 7/28/25  3 Tier Campus Pointe v. Richard & Richard Construction Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| 3 TIER CAMPUS POINTE, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RICHARD & RICHARD CONSTRUCTION CO., INC. et al., <br><br> Defendants and Appellants. | D084035 <br><br><br> (Super. Ct. No. 37-2019-00057433-CU-CD-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Keri Katz, Judge.  Affirmed.

David E. Wilkinson for Defendant and Appellant Richard & Richard Construction Co., Inc.

Wagner Zemming Christensen and Marty E. Zemming for Defendant and Appellant Tony Reed Construction, Inc.

Law Office of Bryan R. Snyder, Bryan R. Snyder; Jassoy Law Firm and Robert Jassoy for Plaintiff and Respondent 3 Tier Campus Pointe, LLC.

# I

## INTRODUCTION

3 Tier Investments, LLC (hereafter, 3 Tier) hired general contractor Richard & Richard Construction Co., Inc. (hereafter, R&R) to construct a commercial shopping center on property owned by 3 Tier. After R&R completed the construction project, stone veneers on the exterior of the shopping center buildings became loose and detached from the buildings. 3 Tier sued R&R and its masonry subcontractor, Tony Reed Construction Co. Inc. (hereafter, Tony Reed; together with R&R, the defendants), alleging negligent installation of the stone veneers.

During trial, it was disclosed that 3 Tier had transferred the property to a wholly owned subsidiary, 3 Tier – Campus Pointe, LLC (hereafter, Campus Pointe), before the discovery of the construction defect or the filing of the lawsuit. Therefore, 3 Tier moved to substitute Campus Pointe in its place as the party plaintiff under Code of Civil Procedure section 473.[1] The trial court granted the motion and related the amendment back to the date the complaint was filed. At the close of trial, the jury found the defendants liable for negligence and the court entered judgment for the substituted plaintiff, Campus Pointe.

On appeal from the judgment, the defendants claim the trial court abused its discretion by substituting Campus Pointe as the party plaintiff and relating the amendment back to the filing of the complaint. We disagree. Therefore, we affirm the judgment.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

## II

## BACKGROUND

On October 29, 2019, 3 Tier filed a negligence action against general contractor R&R and several Doe defendants. The complaint alleged the defendants negligently installed stone veneers on the exterior of buildings at a commercial shopping center owned by 3 Tier, which caused the veneers to become loose and fall off the buildings. It alleged 3 Tier had incurred—and would in the future incur—damages for lost use and enjoyment of the property, expert expenses to evaluate the cause of the falling stones, and future repair and reconstruction costs. Shortly after 3 Tier filed its complaint, R&R cross-complained against its masonry subcontractor, Tony Reed, and 3 Tier substituted Tony Reed as one of the Doe defendants.

The case proceeded to a jury trial in November 2023. At trial, 3 Tier's managing member, Shahiar "Sean" Pourteymour, testified that R&R finished construction of the shopping center in 2013 and the construction defect was discovered in 2019. He also testified that 3 Tier refinanced its loan for the property in 2018, and, as part of the refinancing process, the lender required 3 Tier to transfer the property to a special purpose entity. According to Pourteymour, 3 Tier formed a special purpose entity called Campus Pointe and transferred the property to Campus Pointe in September or October 2018—about a year before the defect was discovered. Pourteymour testified that the property is Campus Pointe's sole asset, Campus Pointe is a wholly owned subsidiary of 3 Tier, and Pourteymour is the managing member of both 3 Tier and Campus Pointe.

Shortly before 3 Tier rested its case in chief, Tony Reed filed a motion for nonsuit, which R&R joined. Tony Reed claimed 3 Tier suffered no damages from the alleged construction defect and thus had no standing to

3

bring the lawsuit. Specifically, Tony Reed argued that 3 Tier did not suffer damages *before* it transferred the property to Campus Pointe because the construction defect was not discovered until a year after the transfer. Tony Reed also contended that Campus Pointe—not 3 Tier—was the only entity that could seek damages that arose *after* the defect was discovered.

In response to the nonsuit motion, 3 Tier moved to amend the complaint to substitute Campus Pointe for 3 Tier as the party plaintiff. Although 3 Tier timely filed its complaint, it requested the substitution after the three-year statute of statute of limitations applicable to Campus Pointe's claims (see § 338) had expired. Thus, if the amendment did not relate back, the suit would be untimely as to the new plaintiff, Campus Pointe. In its motion to substitute, 3 Tier claimed any error in naming itself as the plaintiff was a technical defect, given that Campus Pointe was 3 Tier's wholly owned subsidiary, the causes of action and theories of liability would remain the same after the substitution, and any loss suffered by Campus Pointe was effectively suffered by 3 Tier.

The trial court granted the motion to substitute Campus Pointe as the plaintiff, related the amendment back to the filing of the complaint, and denied the motion for nonsuit. When ruling on the motions, the court opined from the bench that amendment was warranted because Campus Pointe was "a wholly owned subsidiary [of 3 Tier] … the same exact parties, same discovery, same damages, same companies … the strategy was the same, just everything was the same. So there's no prejudice[ to the defendants]."

After all parties rested their cases, the jury returned a special verdict finding the complaint was timely filed within three years of the discovery of the construction defect and the defendants were negligent. The jury found the damages resulting from the negligence totaled $487,705.60, including

4

$22,080 for past repair costs, $414,000 for future repair costs, $21,852.60 for lost rent, and $29,773 for investigation costs. The jury assigned 51% of the harm to Tony Reed and 49% of the harm to R&R.

Thereafter, Tony Reed moved for a new trial on grounds there was an irregularity in the court proceedings (§ 657, subd. (1)), and an error of law at trial (*id.*, subd. (7)). R&R joined the motion. Tony Reed reiterated its earlier claim that it was improper to substitute Campus Pointe as the party plaintiff and relate the amendment back to the filing of the complaint.

The trial court denied the motion for a new trial, again finding the substitution and relation back were proper. The court reasoned the substitution and relation back were appropriate because Campus Pointe was a wholly owned subsidiary of 3 Tier, Pourteymour served as the principal of both entities, Pourteymour mistakenly believed 3 Tier was the proper plaintiff because its subsidiary owned the commercial property, the amendment did not alter the subject matter of the case, and the jury would have received the same evidence regardless of the amendment.

The defendants timely appealed the ensuing judgment in favor of Campus Pointe.

III

DISCUSSION

The defendants challenge the trial court's substitution of Campus Pointe as the party plaintiff in place of 3 Tier, the original plaintiff, and relating the amendment back to the date on which the complaint was filed. As we shall explain, we discern no abuse of discretion in the court's ruling.

Section 473 governs the amendment of pleadings to add, strike, or modify the parties to a case. In part, section 473 states, "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to

5

amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect …. The court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars ….” (§ 473, subd. (a)(1).)

Section 473 “has received a very liberal interpretation by the courts of this state.” (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19 (*Klopstock*); see *Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163 [“It is well established that ‘California courts “have a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others.” ’ ”].) Under section 473, “[a]mendment generally is proper where leave is sought to substitute a new plaintiff based upon a technical defect in the plaintiff’s status, such as an honest mistake in the naming of a party.” (*California Air Resources Bd. v. Hart* (1993) 21 Cal.App.4th 289, 301 [court erred by refusing to permit substitution of the People of the State of California for state agency as plaintiff]; see also *J.C. Peacock, Inc. v. Hasko* (1961) 196 Cal.App.2d 363, 364–365, 368–370 (*J.C. Peacock*) [court correctly substituted surviving parent company as plaintiff for constituent company that had merged into parent company before filing of lawsuit].)

Likewise, “courts liberally allow amendments for the purpose of permitting plaintiffs who lack or have lost standing to substitute as plaintiffs the true real parties in interest.” (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135 (*Nextel*) [court erred by denying leave to amend to taxpayer foundation that lost standing during lawsuit]; see *River’s Side at Washington Square*

6

*Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1239 (*River's Side*) [" ' "A suit is sometimes brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest. Although the original complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed." ' "]; see, e.g., *California Gasoline Retailers v. Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 848–851 (*Cal. Gasoline*) [substitution of corporate president as plaintiff for corporation proper where corporation had no standing]; *Klopstock, supra*, 17 Cal.2d at pp. 19–21 [in derivative action, court properly substituted stockholder's estate as plaintiff for non-stockholder's estate that lacked standing]; *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 790–791 (*Powers*) [court erred by refusing to permit substitution of trustees as plaintiffs for trust administrator who lacked standing].)

A " 'limitation on the rule just mentioned is that the plaintiff proposed to be substituted may not "state facts which give rise to a wholly distinct and different legal obligation against the defendant." [Citation.]' [Citation.] But 'nothing more is meant [by that limitation] than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated.' " (*Nextel, supra*, 143 Cal.App.4th at p. 136; see also *Cal. Gasoline, supra*, 50 Cal.2d at p. 851 [addition of new plaintiff proper because "[t]he amendment to the complaint stated no new cause of action against the defendants, nor did it state any new facts"]; *J.C. Peacock, supra*, 196 Cal.App.2d at p. 369 [" 'A substitution of parties plaintiff is permissible where it does not effect a change in the cause of action and where the party substituted bears a relation to the original plaintiff and to the action.' "].)

7

Similar considerations govern whether to relate an amendment back for statute of limitations purposes. "A new plaintiff's claims relate back to claims asserted in a previously and timely filed complaint if the new plaintiff is seeking to enforce the same right as a previously named plaintiff (because, in that case, the amendment relies on the same general set of facts, involves the same injury, and refers to the same instrumentality of the defendant's conduct)." (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1236; see 5 Witkin, Cal. Procedure (6th ed. 2021 & 2025 supp.) Pleading, § 1263 ["the allowance of amendment and relation back to avoid the statute of limitations does not depend on whether the parties are technically or substantially changed; rather the inquiry is whether the nature of the action is substantially changed. And most of the changes in parties do not change the nature of the action"]; see, e.g., *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [court erred by declining to relate back amended writ petition where "[t]he amended petition merely 'substituted' one plaintiff for another on the same cause of action"]; *Jensen v. Royal Pools* (1975) 48 Cal.App.3d 717, 720–723 (*Jensen*) [court erred by declining to relate back addition of proper party plaintiffs because same facts were alleged in original and amended complaints].) "Conversely, a new plaintiff's claims do *not* relate back if the new plaintiff is seeking to 'enforce a[ ] … right' 'independent' of the right asserted by the previously named plaintiff(s)." (*Engel*, at p. 1237.)

The determination whether to grant leave to amend a complaint and relate the amendment back for statute of limitations purposes is " 'entrusted to the sound discretion of the trial court. "... The exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *More importantly, the discretion to be exercised is that of the trial court, not that of the reviewing court.* Thus, even if the reviewing court might have ruled

8

otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record." ' " (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; see *Powers, supra*, 45 Cal.App.3d at p. 790 [court "abused its discretion" by sustaining demurrer without leave to amend and refusing to permit substitution of new plaintiff with standing in place of original plaintiff who lacked standing].)

Applying these legal principles to the present case, we conclude the trial court acted within the bounds of its broad discretion when it granted the amendment substituting the new plaintiff, Campus Pointe, for the original plaintiff, 3 Tier, and relating the amendment back to the date the complaint was filed. The amendment did not add any new factual allegations to the complaint. It did not add, or alter, the causes of action alleged in the complaint. Nor did it seek to modify the theories of liability upon which the asserted causes of action were based. Instead, it merely replaced the original plaintiff, 3 Tier, with its wholly owned subsidiary and the special purpose entity it established for the sole purpose of owning the commercial property at issue, Campus Pointe. It is apparent to us the substitution corrected an honest mistake about the identity of the proper plaintiff with standing to sue—not a means to inject new parties or issues into the litigation. At the very least, the trial court did not abuse its discretion in finding as much.

Although the substitution introduced no new factual allegations, causes of action, or theories of liability, the defendants argue the substitution was improper because it caused them to be liable for a damages award for which they would not otherwise have been liable if substitution had been denied. The defendants are mistaken. While the substitution of plaintiffs was a but-for cause of the damages award in this case, the substitution of a plaintiff who has standing for a plaintiff who does not have standing will *always* be a

reason the defendant in a given case may be held liable for damages. Yet courts freely permit the substitution of plaintiffs who have standing for those who do not have standing. (*Nextel, supra*, 143 Cal.App.4th at p. 135; *River's Side, supra*, 88 Cal.App.5th at p. 1239.) Instead of focusing on whether a substitution is (or will be) the but-for cause of a damages award, courts must instead examine whether the substitution of plaintiffs exposes the defendant to liability for different *types* of damages than were contemplated by the original complaint. And here, Campus Pointe pursued exactly the same damages 3 Tier sought in the original complaint.

The defendants also claim the court abused its discretion because, in their view, 3 Tier did not offer a satisfactory justification for naming itself as the plaintiff in the original complaint and waiting until mid-trial to request a substitution. We disagree. A court may substitute plaintiffs "at any time before *or after* commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial conference order." (§ 576, italics added; see *Cal. Gasoline, supra*, 50 Cal.2d at p. 848 [court properly substituted plaintiff after close of evidence at trial]; *J.C. Peacock, supra*, 196 Cal.App.2d at p. 365 [court correctly substituted surviving company as plaintiff for constituent company at trial].) Here, Pourteymour—the managing member of both 3 Tier and Campus Pointe—testified at trial about the reasons 3 Tier filed suit in its own name. As he explained, Campus Pointe was a wholly owned subsidiary of 3 Tier, 3 Tier was the sole member of Campus Pointe, and 3 Tier received all the revenue from the property; thus, he apparently believed that 3 Tier "still own[ed] the property," even if the property title was formally held by Campus Pointe. This testimony corroborates our conclusion that the substitution

10

merely corrected a misnomer or technical defect in the pleading, without interjecting new parties or issues into the litigation.

Moreover, the defendants suffered no prejudice from the substitution. As noted, the factual allegations, causes of action, theories of liability, and claimed damages remained exactly the same after the amendment, a strong indication the trial court acted within the bounds of its broad discretion when it permitted the substitution and related the amendment back. (See *Cal. Gasoline, supra*, 50 Cal.2d at pp. 850–851; *Jensen, supra*, 48 Cal.App.3d at p. 722.) The defendants argue they suffered prejudice because the timing of the substitution deprived them of the opportunity to propound pretrial discovery on Campus Pointe about its relationship to 3 Tier or the circumstances surrounding the transfer of the property. However, it is not reasonably probable these tangential discovery issues would have had a material impact on the disputed issues at trial—namely, whether the defendants were negligent in the installation of the stone veneers and whether their negligence harmed the property owner.[2]

In sum, the sole difference between the original complaint and the amended complaint was the replacement of the initial plaintiff, 3 Tier, with its wholly owned subsidiary, Campus Pointe. In all other respects, the witnesses, factual allegations, causes of action, theories of liability, and

---

[2] In any event, it appears the defendants *were* already aware—at or before the start of trial—that 3 Tier had transferred the property to Campus Pointe before it initiated the lawsuit. Pourteymour, the first witness to testify at trial, did not discuss Campus Pointe or 3 Tier's transfer of the property during his direct examination. However, defense counsel immediately questioned him about these topics when it began to cross-examine him. The defense's apparent knowledge about Campus Pointe and the property transfer undercuts any notion the defense was deprived of an opportunity to explore these topics, either at trial or during discovery.

claimed damages remained precisely the same.  Under these circumstances, we conclude the trial court did not abuse its discretion by substituting the plaintiff and relating the substitution back to the filing of the complaint.[3]

---

[3]     The defendants analogize this case to *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526 (*Bartalo*), and *Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468 (*Diliberti*), where courts held that it was either improper to substitute a new plaintiff or relate the substitution back in the cases before them.  Those decisions are distinguishable from the current case and they do not establish that the trial court abused its discretion here.

In *Bartalo*, a husband and wife were involved in an automobile accident that injured the wife.  (*Bartalo, supra*, 51 Cal.App.3d at p. 528.)  She filed suit against the defendant and the trial court later authorized the filing of an amended complaint *adding* the husband as a second plaintiff with a new loss of consortium claim, even though the statute of limitations had run on the new claim.  (*Ibid*.)  The *Bartalo* court determined the trial court should have dismissed the husband's claim as untimely.  (*Id*. at p. 534.)  As the court explained, the amended complaint did not relate back to the filing of the original complaint because the husband was a "new and additional party," he sought "damages not previously pleaded," and the loss of consortium claim was a "wholly different legal liability or obligation" than the wife's claims. (*Id*. at pp. 534–535.)  The present case is distinguishable, as the amendment here substituted one plaintiff for another (rather than adding a new plaintiff), the substituted plaintiff sought the same damages as the original plaintiff, and no new or different causes of action were alleged.

The *Diliberti* case also involved an automobile collision.  In that case, one sister was not injured when the vehicle she drove was involved in an accident, but a second sister—a passenger—was injured.  (*Diliberti, supra*, 4 Cal.App.4th at pp. 1469–1470.)  A complaint was filed naming the uninjured driver as the plaintiff.  (*Id*. at p. 1470.)  After the statute of limitations passed on the injured passenger's unasserted claims, she sought permission to substitute herself for the uninjured driver as the plaintiff.  (*Ibid*.)  The trial court denied the amendment and the Court of Appeal affirmed.  (*Id*. at pp. 1470–1472.)  The court reasoned the amendment was improper because the original complaint did not reference a passenger in the vehicle.  (*Id*. at pp. 1471–1472.)  In short, the amendment was improper because it sought to inject new facts (the injury of an unidentified passenger) into the case.  But the court stated it "would have no trouble permitting the substitution … if the body of the complaint sounded as a claim for a passenger."  (*Id*. at

12

IV

DISPOSITION

The judgment is affirmed.  Costs of appeal are awarded to Respondent.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


BUCHANAN, J.

---

p. 1470.)  Here, the complaint has *always* been framed as a negligence complaint filed by the true owner of the property.