[Civ. No. 23615. Second Dist., Div. One. Aug. 26, 1960.]

J. C. PEACOCK, INC. (a Corporation), Respondent, v. JOHN H. HASKO et al., Appellants.

Ralph W. Evans and Guy Richards Crump for Appellants.

Danielson & St. Clair and Deryl D. Shumway for Respondent.

FOURT, J.—This is an appeal from a minute order (filed April 11, 1958) which was entered April 15, 1958, denying a motion of certain defendants to discharge a writ of attachment and an alias writ of attachment.

A résumé of the proceedings is as follows:

Prior to January 14, 1953, the J. C. Peacock Machine Company was a corporation duly organized and existing under the laws of the State of California.

On January 14, 1953, an agreement of merger between J. C. Peacock, Inc., and J. C. Peacock Machine Company, corporations, together with certificates of each of said corporations, was filed with the Secretary of State of California and as of said date said corporations were merged. J. C. Peacock, Inc., continued as the surviving corporation as defined in Corporations Code, section 4101.

On or about August 13, 1953, a verified ''Complaint for Fraud and Money Due'' was filed. This complaint was captioned ''*J. C. Peacock Machine Co., a California corporation,* Plaintiff . . .'' (Emphasis added.) Paragraph I of the complaint reads in part as follows:

''That at all times mentioned herein the *Plaintiff was and now is a corporation duly organized and existing by and in accordance with the laws of the State of California; . . .*'' (Emphasis added.)

On the same day an ''Affidavit for Attachment Against Resident Section 538'' was filed. This was signed by J. C. Peacock, and captioned ''*J. C. Peacock Machine Co.,* a California corporation, . . .'' (Emphasis added.) Also on August 13, 1953, a purported ''Undertaking On Attachment'' was filed, wherein J. C. PEACOCK MACHINE Co., a California corporation, was named as plaintiff and Hartford Accident and Indemnity Company as surety, in the amount of $27,183.19. Finally, on the same day, a purported writ of attachment was issued based upon the aforesaid affidavit and undertaking, which writ was levied on real and personal property of defendants.

On September 2, 1953, ''Demurrer—General and Special'' was filed by defendants John Hasko, Leonard R. Greer, Ronald C. Hinman and Ernest Sanchez.

On September 10, 1953, an ''Alias Writ of Attachment'' was issued, wherein J. C. Peacock Machine Company was named as plaintiff, and thereafter levy made on the business and personal property of defendant, Pacific Aircraft Products.

On October 8, 1953, the verified ''First Amended Complaint for Fraud and Money Due'' was filed. This complaint was

also captioned *"J. C. Peacock Machine Co., a California corporation,"* (emphasis added) and it was set forth in Paragraph I thereof:

"That at all times herein mentioned the *plaintiff was, and now is, a corporation duly organized and existing by and in accordance with the laws of the State of California; . . ."* (Emphasis added.)

On October 28, 1953, a "Demurrer General and Special" to the First Amended Complaint was filed by named defendants and Pacific Aircraft Products, the partners in which are T. M. Hinman, Earl C. Plummer and Leonard R. Greer.

On December 14, 1953, the verified "Second Amended Complaint—for Fraud and Money Due" was filed. This complaint was also captioned *"J. C. Peacock Machine Co., a California corporation"* (emphasis added) and in Paragraph I thereof it was set forth:

"That at all times herein mentioned the *plaintiff was, and now is, a corporation duly organized and existing by and in accordance with the laws of the State of California; . . ."* (Emphasis added.)

On January 19, 1954, a "Demurrer to Second Amended Complaint General and Special" was filed by the named defendants and Pacific Aircraft Products. On February 26, 1954, an "Answer" to the Second Amended Complaint was filed by the named defendants. The "Alias Writ of Attachment" which had been issued September 10, 1953, was filed March 18, 1954.

On March 28, 1955, a "Notice of Motion for Order Declaring that Plaintiff Has Made Election of Remedies and Dismissing Certain Causes of Action of Plaintiff's Second Amended Complaint" was filed by the defendants, Hasko and other answering defendants.

On March 30, 1955, a "Memorandum of Plaintiff in Opposition to Motion for Order Declaring that Plaintiff has Made Election of Remedies and Dismissing Causes of Action" was filed. In a minute order dated March 30, 1955, it is set forth that the trial court ruled as follows: "Motion granted as to 1st, 2nd, 3rd and 4th causes of action and denied as to 5th, 6th and 7th causes of action." On April 11, 1955, a "Notice of Motion for Reconsideration of Motion of Defendants for Order Declaring that Plaintiff has Made an Election of Remedies and Dismissing Certain Causes of Action" was filed by the plaintiff. On April 13, 1955, the motion to reconsider was

granted. In a minute order dated April 18, 1955, the court reaffirmed its ruling of March 30, 1955, and further stated:

"The transactions described in Count One could be the basis for the common count. Since they could be, plaintiff could and did elect. If such facts cannot be proved under the last count, not because of lack of pleading but lack of facts, that is the risk plaintiff took in so electing."

The trial of the action was originally set for April 4, 1955, and was continued to July 18, 1955. In a minute order dated July 19, 1955, it is set forth:

"Trial is resumed from July 18, 1955 with parties and counsel present as before. *The motion of defendants, submitted July 18, 1955 to exclude testimony by plaintiff on Counts 5, 6, and 7 of the Second Amended Complaint is interpreted by the court as a General Demurrer to said causes of action of said second amended complaint and is sustained. Plaintiff is given permission to amend same within 10 days from date hereof.* The motion to exclude testimony is ordered off calendar. The trial is ordered off calendar subject to resetting after thirty days. . . ." (Emphasis added.)

On July 27, 1955, a verified "Third Amended Complaint for Fraud and Money Due" was filed. *This time however, and for the first time,* the complaint was captioned *"J. C. Peacock, Inc., a California corporation, dba J. C. Peacock Machine Co."* (Emphasis added.) Paragraphs I and II of the aforementioned complaint provide as follows:

"I

"That plaintiff is a corporation duly organized and existing under the laws of the State of California and since the 14th day of January, 1953, plaintiff has been doing business in the County of Los Angeles, State of California, under the fictitious firm name and style of J. C. Peacock Machine Co., and has caused to be published and filed with the County Clerk of the County of Los Angeles, State of California, a certificate as required by Sections 2466 et seq. of the Civil Code of the State of California.

"II

"That at all times herein mentioned prior to the 14th day of January, 1953, J. C. Peacock Machine Co. (hereinafter sometimes designated as plaintiff's predecessor) was a corporation duly organized and existing under the laws of the State of California. *On the 14th day of January, 1953, an agreement of merger between plaintiff corporation, J. C.*

*Peacock, Inc., and J. C. Peacock Machine Co., a corporation, together with certificates of each of said corporations, was filed with the Secretary of State of the State of California and as of said date said corporations were merged.* That plaintiff corporation continued as the surviving corporation as defined in Corporations Code, Section 4101.'' (Emphasis added.)

The certificate as required by section 2466 et seq. of the Civil Code was not filed until early in 1955.

On August 8, 1955, demurrers to the third amended complaint were filed. Also, on the same date, notices of motions to strike the third amended complaint were filed. A minute order dated August 18, 1955, shows that the hearing on the demurrers and motions just referred to were continued to August 25, 1955. On August 22, 1955, a ''Notice of Motion for Leave to File Amendment to Complaint and Correction of the Name of Plaintiff, . . .'' was filed.

A minute order dated August 25, 1955, shows that the demurrers and motions to strike were placed off calendar. The motion of plaintiff for permission to file an amendment to the second amended complaint in the form of the third amended complaint ''on file herein, and for correction and insertion of proper name of plaintiff set forth in third amended complaint on file'' was granted. Each defendant excepted to each ruling.

''Points and Authorities in Opposition to Motion of Plaintiff for Leave to Substitute New Party Plaintiff'' had been filed August 25, 1955.

On September 22, 1955, demurrers to the third amended complaint were filed. Also a notice of motion to strike from the third amended complaint was filed.

A minute order dated September 28, 1955, stated that the various demurrers and motions to strike were continued to November 9, 1955, and on November 9, 1955, the aforesaid matters were continued to November 23, 1955, and were subsequently continued to December 2, 1955. The minute order of December 2, 1955, indicates that the aforesaid matters were submitted on that date. On December 5, 1955, the demurrers were overruled and the motions denied.

On December 27, 1955, the answers of the defendants were filed to the third amended complaint. The action was set to be tried on May 7, 1956. By stipulation, the trial was continued to September 24, 1956, and was further continued to

February 27, 1957. The trial was completed April 5, 1957, and the cause was then submitted.

The "Memorandum Ruling" signed by Judge Clarence M. Hanson filed May 20, 1957, provides in pertinent part as follows:

"The motion of the defendants to dismiss cause No. SG C 497 is denied. In support of the motion the defendants cite *Crossman* v. *Vivienda Water Co.*, 150 Cal. 575 [89 P. 335]; *Panzer-Hamilton Co.* v. *Bray,* 96 Cal.App. 460 [274 P. 769], and other cases decided by the California courts. In the Crossman case a judgment was entered against a corporation which had ceased to exist long prior to the filing of the case in which the judgment was entered. The Panzer case is of a like kind. Neither case is an authority here.

"The question here is whether a corporation possessing a cause of action which is merged with another corporation may maintain a suit after the merger in its original name and if not if the corporation with which it was merged may be substituted for it and proceed to judgment. The better view is that it may. See *American Fidelity & Cas. Co.* v. *All Am. Bus Lines, Inc.,* 190 F.2d 234; cert. denied 342 U.S. 851 [72 S.Ct. 79, 96 L.Ed. 642]. See also note 65 Harv. L. Rev., 1066 discussing the case.

"The next question is whether the defendant's motion to strike the first and second counts of the third amended complaint should be granted or denied. I am of the view that the doctrine enunciated in *Steiner* v. *Rowley,* 35 Cal.2d 713 [221 P.2d 9], is here controlling and hence that the plaintiff must be deemed to have elected to proceed on the contract count. Hence the motion to strike counts 1 and 2 is granted."

On March 12, 1958, a "Notice of Motion for Order Authorizing and Directing Sheriff to Deliver Attached Property, Pursuant to Section 542b Code of Civil Procedure" was filed by defendants. On the same date, a *"Notice of Motion to Discharge Attachment"* was filed by defendants. (Emphasis added.)

A minute order dated March 21, 1958, in Department 26 of the Superior Court of Los Angeles County, Judge John F. Aiso, Presiding, indicates that the motion to discharge the writ of attachment and the alias writ of attachment was continued to April 4, 1958. The motion to authorize and direct the sheriff to deliver the attached property was granted.

The minute order dated April 4, 1958, indicates that the

motion to discharge the writ of attachment and alias writ of attachment was submitted.

By a minute order dated April 11, 1958, the motion to discharge the writ of attachment and the alias writ of attachment were *"Motion Denied Pursuant to, 'Memorandum in re Ruling,' on File Herein."* (Emphasis added.)

The "Memorandum in Re Ruling on Motion to Discharge Attachment" filed April 11, 1958, provides:

"Motion of defendants . . . to discharge writ of attachment and alias writ of attachment, heretofore argued orally and submitted with written memoranda of points and authorities on April 4, 1958, is hereby DENIED.

"Prior orders and decisions dismissing the various tort causes of action as falling within the purview of the doctrine set forth in *Steiner* v. *Rowley,* 35 Cal.2d 713, 720 [221 P.2d 9] have (impliedly at least) determined the attachment to be valid. If the attachment were defective as now urged by the moving parties defendant, no binding election of remedies could have been found as an invalid attachment doesn't constitute a binding election. (4 Am.Jur. (Attachment and Garnishment, § 15), p. 560; 18 Am.Jur. (Election of Remedies, § 47), p. 165).

"A party cannot in the same action or proceeding 'Blow hot and cold' at different stages (*Schulze* v. *Schulze,* 121 Cal. App.2d 75, 83 [262 P.2d 646]). In fact, it would appear to this Court that the moving parties are now barred from urging the invalidity of the attachment by the doctrine of election of remedies, which is one facet of the more encompassing doctrine of estoppel."

No amended or new affidavit of attachment nor any new undertaking on attachment was filed in the name of J. C. Peacock, Inc. The only affidavit and undertaking on attachment were those filed on August 13, 1953, naming J. C. Peacock Machine Company as the plaintiff.

Appellants raise two questions on this appeal. First, can a corporation, the separate existence of which had ceased because of a merger, initiate an action and cause defendants' (appellants) properties to be attached?

As heretofore indicated in the statement of fact, on January 14, 1953, a merger occurred between the J. C. Peacock, Inc., and the J. C. Peacock Machine Company. J. C. Peacock, Inc., continued as the surviving corporation.

Corporations Code, sections 4101 and 4102, define "surviving corporation" and "constituent corporation." Surviving

150

corporation means "the corporation into which one or more other corporations are merged, . . ." Constituent corporation means "a corporation which is merged . . . with one or more other corporations, . . ."

On or about August 13, 1953 (some seven months *after* the merger), a verified "Complaint for Fraud and Money Due" was filed in the name of "J. C. PEACOCK MACHINE Co., a California corporation" (*i.e.* in the name of the constituent corporation). On the same day, the affidavit of attachment and an undertaking on attachment were filed and finally, a writ of attachment was issued, *all in the name of J. C. Peacock Machine Co. (i.e.,* the constituent corporation).

On September 10, 1953, an "Alias Writ of Attachment" was issued. On October 8, 1953, the "First Amended Complaint" was filed, still captioned "J. C. PEACOCK MACHINE Co., a California corporation" as plaintiff. On December 14, 1953, the "Second Amended Complaint" was filed, still captioned as before.

It was not until July 19, 1955 (some 23 months after the action was originally initiated and during the course of the trial itself), that plaintiff was granted permission to amend its "Second Amended Complaint." On July 27, 1955, a "Third Amended Complaint" was filed. For the first time, the complaint was captioned "J. C. PEACOCK, INC., a California corporation, dba J. C. PEACOCK MACHINE Co."

 Merger is an organic change in the enterprise which is not liquidation but does involve the incidental dissolution of the merged corporation. The merger consists of a combination, whereby constituent corporations are merged into a surviving corporation. (13 Am.Jur., Corporations, § 1176, p. 1086.)

 At common law, upon a dissolution, a corporation ceased to exist for any purpose. It could not be bound civilly nor prosecuted criminally any more than a natural person who had died. (*United States* v. *United States Vanadium Corporation,* 230 F.2d 646 (10th Cir.), cert. denied 76 S.Ct. 836.)

 The question as to whether a corporation is continued for any purpose depends upon the law of the state of its incorporation. (*United States* v. *Safeway Stores,* 140 F.2d 834, 836 (10th Cir.).)

 The California position is stated in *Crossman* v. *Vivienda Water Co.,* 150 Cal. 575 at page 580 [89 P. 335]:

"It is settled beyond question that, *except as otherwise pro-*

*vided by statute,* the effect of the dissolution of a corporation is to *terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name."* (Emphasis added.)

 Section 4116 of the Corporations Code sets out the exception to the common law doctrine. This section provides in pertinent part as follows:

"Upon merger . . . , *the separate existence of the constituent corporations ceases,* . . . and the . . . surviving corporation shall succeed, without other transfer, to all the rights and property of each of the constituent corporations, and shall be subject to all the debts and liabilities of each, in the same manner as if the surviving . . . corporation had itself incurred them.

" . . . . . . . . . . . . . .

"Any action or proceeding *pending* by or against any constituent corporation may be prosecuted to judgment, which shall bind the . . . surviving corporation, or the . . . surviving corporation may be proceeded against or substituted in its place." (Emphasis added.)

It seems clear that the exception referred to in the aforementioned section is applicable only to *"pending"* actions or proceedings. Had the Legislature intended to permit constituent corporations to initiate and maintain any actions, it would not have used the word "pending." Under the aforementioned code section, a pending action can be maintained by the constituent corporation, but an action or proceeding not yet begun cannot be initiated in the name of the dead (constituent) corporation.

No California case has been cited to us where an action was *initiated* by a constituent corporation *after merger.*

 The remedy of attachment is not a distinct proceeding but one auxiliary to an action at law. It is an extraordinary and summary proceeding in rem. (*Stowe* v. *Matson,* 94 Cal. App.2d 678, 683 [211 P.2d 591].)

In this case, the complaints (*i.e.,* the original, first amended, and second amended), the affidavit of attachment, the undertaking on attachment, the writ of attachment and finally, the alias writ of attachment, all contained the name of J. C. Peacock Machine Co., as plaintiff. As was heretofore indicated, by virtue of Corporations Code, section 4116, the separate existence of the J. C. Peacock Machine Company had already ceased.

 It is fundamental that an action brought in the name

of a nonexistent plaintiff, natural or artificial, is a nullity. As stated in 67 Corpus Juris Secundum (Parties), page 896, paragraph 4:

"In every action there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial person, and a suit brought in the name of that which is not a legal entity is a mere nullity.

". . . [A]n action may not be maintained in the name of a plaintiff who is not a natural or an artificial person having legal entity to sue or be sued."

Since J. C. Peacock Machine Company could not initiate the action at law, it would appear that it was not entitled to the extraordinary and summary proceeding of attachment.

The fact that the trial court, during the trial, permitted plaintiff to file a third amended complaint, wherein the caption was changed to J. C. Peacock, Inc., an existing entity, did not cure the defect in the original attachment.

The defect was still present in the affidavit of attachment, the undertaking on attachment, and finally, the writ and alias writ of attachment. These still indicated that the plaintiff was "J. C. Peacock Machine Co."

It must be apparent that in effect there was no undertaking or bond. The undertaking signed by Hartford Accident and Indemnity Company went to J. C. Peacock Machine Company, a corporation, which did not exist.

Without a principal there can be no surety. It may well be that the writs of attachment, the affidavit and the undertaking could have been amended by substituting the proper party and thereby Hartford could have determined whether to accept or reject the substituted party and whether to write the bond but this was not done.

Appellants' second question on appeal is whether they are "barred by the doctrine of election of remedies or estoppel from attacking this attachment?"

The trial court when it denied appellants' motion to discharge the writ of attachment and the alias writ of attachment, filed a "Memorandum in Re Ruling."

As indicated in the statement of facts on March 28, 1955, a "Notice of Motion for Order Declaring that Plaintiff has Made Election of Remedies . . ." was filed. In a minute order dated March 30, 1955, the trial court ruled as follows:

"Motion granted as to 1st, 2nd, 3rd and 4th causes of action

and denied as to 5th, 6th and 7th causes of action." In a minute order dated April 18, 1955, the trial court reaffirmed its ruling of March 30, 1955 (*supra*), and further stated:

"The transactions described in Count One could be the basis for the common count. Since they could be, *plaintiff could and did elect*. If such facts cannot be proved under the last count, not because of lack of pleading but lack of facts, *that is the risk plaintiff took in so electing*." (Emphasis added.)

The denial of the motion to discharge the writ and alias writ of attachment was, as indicated by the "Memorandum in Re Ruling," predicated upon a theory that defendants were estopped to assert the invalidity of the attachment by virtue of their previous conduct (*i.e.* obtaining the order declaring that plaintiff had made an election of remedies). We believe that this was erroneous.

It must be remembered that at the time the motion for the order declaring that plaintiff had made an election of remedies, the record was such, and all parties apparently believed, that the "J. C. PEACOCK MACHINE Co." was a corporation duly organized and *existing* by and in accordance with the laws of the State of California—an entity in *esse*, capable of suing and being sued.

It was only afterwards that J. C. Peacock, Inc., contended that it was doing business under the fictitious firm name and style of J. C. Peacock Machine Company. It is difficult to see how J. C. Peacock, Inc., could have been doing business under the fictitious name J. C. Peacock Machine Company when it is remembered that there were many verified statements made to the effect that J. C. Peacock Machine Company was a corporation and was doing business in California. The respondent asserts in one breath that it did not in fact know of the merger of the two corporations and in the next assert that the one was doing business under the fictitious name. How can a company do business under a fictitious name and at the same time not be aware of it?

It was the "J. C. PEACOCK MACHINE Co." which sought to avail itself of the provisional remedy of attachment. By so doing, the "J. C. PEACOCK MACHINE Co." pursued a course of conduct inconsistent with its tort allegations, and thereby, elected to proceed in contract rather than tort. (*Acme Paper Co.* v. *Goffstein*, 125 Cal.App.2d 175, 178 [270 P.2d 505]; *Steiner* v. *Rowley*, *supra*, 35 Cal.2d 713, 720 [221 P.2d 9].)

It was not until July 27, 1955, that the fact of merger was

disclosed by plaintiff. For the first time the record disclosed that the "J. C. PEACOCK MACHINE Co." had ceased its separate existence *prior* to the time the action had been initiated.

This being true, defendants were not estopped to raise the issue of invalidity of the attachment.

For the reasons stated, the order denying the motion to discharge the writ of attachment and alias writ is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied September 12, 1960, and respondent's petition for a hearing by the Supreme Court was denied October 19, 1960.