Filed 4/14/25

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| 1215 FELL SF OWNER LLC,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>FELL ST. AUTOMOTIVE CLINIC et al.,<br><br>    Defendants and Appellants. | A171441<br><br>(San Francisco City & County Super. Ct. No. CUD-20-667352) |
| 624 STANYAN SF OWNER LLC,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>STANYAN ST. AUTOMOTIVE CLINIC et al.,<br><br>        Defendants and Appellants. | A171442, A171446<br><br>(San Francisco City & County Super. Ct. No. CUD-20-667353) |

In these three consolidated appeals arising from two related unlawful detainer proceedings filed by Fell Holdings LLC (Fell Holdings) and Stanyan Holdings LLC (Stanyan Holdings),[1] appellants Fell Street Automotive Clinic (Fell Street Clinic), Stanyan Street Automotive Clinic (Stanyan Street

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A. and II.C.

[1] As we explain in the unpublished portion of this opinion, due to a transfer of their interests in the properties at issue, Fell Holdings and Stanyan Holdings have been replaced as respondents by entities named 1215 Fell SF Owner LLC and 624 Stanyan SF Owner LLC.

Clinic), and Laurence Nasey (Nasey) seek review of certain postjudgment orders.

Fell Holdings and Stanyan Holdings misdescribed themselves as California limited liability companies rather than Delaware limited liability companies in their unlawful detainer complaints. Arguing that this pleading defect deprived the trial court of fundamental jurisdiction because a legally nonexistent entity has no capacity to sue, appellants cite *Oliver v. Swiss Club Tell* (1963) 222 Cal.App.2d 528 (*Oliver*) for the proposition that all judicial action taken in these cases was void *ab initio*.

We rejected a similar argument in *Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142 (*Jo Redland Trust*), and reject appellants' version of it here as well. Even if we accept the premise of appellants' claim—that the pleading discrepancy at issue here, minor or not, has jurisdictional implications—the issue under *Jo Redland Trust* is whether the discrepancy is curable by amendment, not whether all judicial action in these cases should be treated automatically as a nullity.

We will reverse and remand so that, if they wish to do so, respondents may pursue curative amendments under Code of Civil Procedure section 473, subdivision (a)(1).[2] We take no view as to whether such a motion should be granted.

## I.

All three appeals here turn on a single issue arising out of the same set of background facts. In brief, those facts are as follows. For many years, Nasey owned two separate properties in San Francisco (the Properties), one on Fell Street, and one on Stanyan Street. At these locations Nasey operated

---

[2] All further undesignated statutory references are to the Code of Civil Procedure.

a sole proprietorship under the dba's, "Ted & Al's Towing" and "Ted & Al's Service." He lost ownership of the Properties in a nonjudicial foreclosure during the pandemic, but managed to remain in business by agreeing to a leaseback arrangement with the new owners, Fell Holdings and Stanyan Holdings respectively. This leaseback arrangement was memorialized in a September 2020 settlement agreement (the Settlement Agreement).[3]

Under the Settlement Agreement, Fell Street Clinic and Stanyan Street Clinic became tenants of Fell Holdings and Stanyan Holdings for a period of months, and during that time Nasey was given the opportunity to repurchase the Properties. For each of the Properties, the parties stipulated to entry of judgment against appellants if Nasey failed to close escrow on the contemplated repurchase (the Stipulations for Entry of Judgment). Shortly after entering the Settlement Agreement, Fell Holdings and Stanyan Holdings filed but did not serve two unlawful detainer proceedings, one naming Stanyan Street Clinic as the tenant defendant (the Stanyan Street case), and the other naming Fell Street Clinic as the tenant defendant (the Fell Street case).[4]

Pursuant to the Stipulations for Entry of Judgment, on February 19, 2021, the trial court filed identical judgments in the Stanyan Street case and

---

[3] The Settlement Agreement appears to have been restated and amended in connection with a declaratory relief action and mediation separate from the unlawful detainer proceedings at issue here, but so far as we can tell none of the amendments is material to these appeals.

[4] As filed, the unlawful detainer complaints also named as tenant defendants Nasey and certain other members of Nasey's family, but the individual defendants were later dismissed.

in the Fell Street case (the Eviction Judgments).[5] The Eviction Judgments were initially filed under seal and provided for a forbearance period during which appellants were obligated to pay certain rental arrearages and current monthly rent on a monthly schedule. In late 2022, however, after the deadline for Nasey's repurchase of the Properties passed, respondents brought motions to unseal and to enforce the Eviction Judgments. On December 21, 2022, the court issued identical orders unsealing and granting enforcement of the Eviction Judgments (collectively the Enforcement Orders).

In April 2023, appellants moved to vacate the Eviction Judgments and the Enforcement Orders, for the first time arguing a lack of fundamental jurisdiction on the ground that Fell Holdings and Stanyan Holdings are not California limited liability companies; that those alleged entities have no legal existence; and that, as a result, all judicial action in both cases, from the date they were filed, was null and void under *Oliver*, *supra*, 222 Cal.App.2d 528. The court rejected this argument, and on August 4, 2023 issued substantively identical orders denying the vacatur motions (the Denial of Vacatur Orders).

In the first of the appeals before us (No. A171442), appellants Nasey and Stanyan Street Clinic challenge the validity of a December 21, 2022 order, one of the two Enforcement Orders (the unsealing and enforcement order entered in the Stanyan Street case). Among other things, that order approves the release to Stanyan Holdings of a $202,500 earnest money deposit paid into escrow by Nasey in connection with his unsuccessful attempt to repurchase the Properties. In the second and third appeals

---

[5] Respondents' requests for entry of the Eviction Judgments were apparently presented ex parte, and according to appellants, without appellants' knowledge or consent.

4

(Nos. A171441 and A171446), appellants Nasey, Fell Street Clinic, and Stanyan Street Clinic seek review of the Denial of Vacatur Orders.

## II.

At the heart of all three appeals is a single question arising from what respondents argue is, at worst, a minor pleading error in each of the unlawful detainer complaints.  That question is:  Because the respondents misdescribed themselves as California limited liability companies rather than Delaware limited liability companies, does the naming discrepancy require us to conclude that the Eviction Judgments are void in both cases, entitling appellants to restoration of possession of the Properties and return of the earnest money deposit?  Reprising the argument they made in the trial court, appellants urge us to hold that, under *Oliver*, the answer is yes.  As noted above, we addressed and rejected a similar argument in a recent opinion.  (*Jo Redland Trust, supra,* 92 Cal.App.5th at pp. 152–161.)  Although the circumstances here differ in some respects from the scenario we addressed in that case, we conclude that *Jo Redland Trust* is controlling.

## A.

Before turning to appellants' *Oliver* argument, we address two threshold matters of appellate procedure.

First, two entities named 1215 Fell SF Owner LLC (Fell Owner) and 624 Stanyan SF Owner LLC (Stanyan Owner) move to substitute themselves for Fell Holdings and Stanyan Holdings, respectively, in appeals A171441 (Fell Owner's motion) and A171442 and A171446 (Stanyan Owner's motions) under section 368.5 on the ground that "title to the real property" in the underlying unlawful detainer actions, as well as "all right, title, and claim with respect to the . . . causes of action asserted . . . in [these] action[s], have been transferred" to Fell Owner and (in substantively similar language) to Stanyan Owner.  Appellants oppose substitution on the grounds that Fell

5

Owner and Stanyan Owner are "stranger[s]" to this litigation and are attempting to make an "end run" around the central issue presented in the appeals.

We will grant the motions. As corporate successors to the interests of Fell Holdings and Stanyan Holdings by assignment, Fell Owner and Stanyan Owner have acquired whatever interests Fell Holdings and Stanyan Holdings once held, and are entitled to stand in the shoes of respondents on appeal. We do not agree with appellants' suggestion that party substitution on appeal is an evasion of the jurisdictional issue they have raised on the merits. Whether party substitution on appeal is warranted based on a change in corporate ownership *during the pendency of the appeals* is a different issue than whether Fell Holdings and Stanyan Holdings, as they described themselves in their own complaints, legally existed as persons entitled to bring suit.

Second, Fell Owner has moved to dismiss appeal A171441 on the ground that the denial of vacatur order entered in that case is nonappealable. Prior to oral argument, we denied this motion. We now explain why. The Eviction Judgments fully resolved the issue of possession of the Properties. Since possession is the only issue that *must* be decided in a summary unlawful detainer proceeding (*Northrop Corp. v. Chaparral Energy, Inc.* (1985) 168 Cal.App.3d 725, 729), there was nothing other than enforcement left to be addressed once the trial court resolved that issue by entering the Eviction Judgments. (See *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9 ["A judgment that leaves no issue to be determined except the fact of compliance with its terms is appealable."].)

Pointing out that the unlawful detainer complaints, as filed, requested holdover damages, Fell Owner insists that the issue of holdover damages has

6

yet to be decided, as do certain other, unspecified issues concerning prospective performance of the appellants' leasehold obligations. Appellants disagree, claiming that there remains "no issue for future consideration except the fact of compliance by the parties." On this record, appellants have the better of the argument. Hypothetical future disputes that might arise concerning matters unrelated to the issue of possession do not convince us that anything more than matters of enforcement remain pending.[6] The denial of vacatur order in appeal A171441 is appealable under section 904.1, subdivision (a)(2) as an order after judgment.

## B.

Appellants argue that the named unlawful detainer plaintiffs, Fell Holdings and Stanyan Holdings, are not real entities and have no capacity to sue or enter into contracts. This is so, appellants contend, based on allegations Fell Holdings and Stanyan Holdings make in describing

---

[6] Nasey and Fell Street Clinic apparently remain in possession of the property on Fell Street. That appears to be due to a combination of the following: (1) the property address in the unlawful detainer complaint in the Fell Street action appears to have been either incorrect or alleged imprecisely (1213 Fell Street when it actually spans two Fell Street addresses, 1213–1215 Fell Street), and (2) Nasey was not named in the Eviction Judgments because he and other members of the Nasey family were dismissed from both cases before the Eviction Judgments were entered. In appellants' view, the resulting difficulties respondents faced in obtaining a writ of possession and enforcing the Eviction Judgments against Nasey and Fell Street Clinic are problems of their own making. Without getting into which of the parties' competing factual narratives surrounding these issues is correct, we can say this: What is relevant for purposes of the appealability of the Denial of Vacatur Orders is that when entry of judgment was requested and granted in each case, the Eviction Judgments resolved all issues of possession then pending between the parties in the cases at that time.

7

themselves.[7] Relying on *Oliver, supra,* 222 Cal.App.2d 528, appellants contend it has been "settled for over 100 years [that] if a party does not exist, it cannot enter into legal agreements, be represented by counsel, or prosecute or defend any legal action." Because no entity named "Fell Holdings LLC . . . a California limited liability company" or "Stanyan Holdings LLC . . . a California limited liability company" exists, appellants argue that the trial court lacked fundamental jurisdiction to enter judgment. Indeed, they go even further. Citing *J. C. Peacock, Inc. v. Hasko* (1960) 184 Cal.App.2d 142 (*J. C. Peacock I*), they contend that the jurisdictional defect at issue here, which is unwaivable and may be raised at any time (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339), cannot be cured by amendment.

Respondents, for their part, do not contest the principle that a court lacks fundamental jurisdiction to proceed in an action initiated by a nonexistent party or that jurisdictional defects may be raised at any time, including after entry of judgment (see *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 116), but claim instead that the incorrect description of the corporate plaintiffs in this case does not involve a problem of "nonexistence." Rather, pointing to a cryptic passage in a century-old Court of Appeal opinion that has never been cited for the proposition respondents urge us to adopt, they say their misdescription of their own corporate identity should be ignored as a "trivial" scrivener's error. (*Tropical Investment Co. v. Brown* (1919) 45 Cal.App. 205, 211 (*Tropical Investment*).)

Neither appellants' position nor respondents' position is correct.

---

[7] Appellants ask us to take judicial notice of various proffered evidence relating to their *Oliver* argument. We deny those requests. The proffered evidence is unnecessary to resolution of these appeals.

We do not agree that *Tropical Investment* resolves the jurisdictional issue appellants raise. The *Tropical Investment* opinion opens with the statement, "We are constrained [to say] . . . that, after patiently examining the 176 pages of the appellant's brief, we are unable to form a clear idea therefrom of the essential facts of this case or the legal points upon which the appellant relies for a reversal of the judgment." (*Tropical Investment, supra,* 45 Cal.App. at p. 206.) Though the disposition in the case is clear—the court affirms a judgment in favor of the plaintiff, a Utah corporation, evicting one Edna Brown from a Los Angeles hotel property that a predecessor to the corporate plaintiff had acquired by foreclosure sale—the reasoning is opaque. (*Id.* at pp. 206, 209, 210, 213.) To the extent a discernible principle can be drawn from the reference in the *Tropical Investment* opinion to a triviality (see *id.* at p. 211), we read the court to be signaling reliance on the doctrine of harmless error. Where fundamental jurisdiction is lacking—something the *Tropical Investment* panel does not address—it seems to us that the issue is never harmless, which is why it is unwaivable and can be raised at any time.

But that does not mean appellants are entitled to what may be windfall relief in this case. Just as the respondent did in *Jo Redland Trust*, they overread *Oliver*. We explained in *Jo Redland Trust* that the passing reference to voidness *ab initio* in the *Oliver* opinion appears to be nothing more than an outmoded style of judicial formalism that must be understood against the backdrop of what was actually decided in that case. (*Jo Redland Trust, supra*, 92 Cal.App.5th at pp. 157–159 & fn. 6.) Because a motion for a curative amendment under section 473 was never presented in the trial court in *Oliver*, the Court of Appeal had no occasion to address whether the pleading defect at issue there could be rectified. (*Jo Redland Trust,* at pp. 148, 154–155.) We took the next step in *Jo Redland Trust* and addressed

9

the section 473 issue, holding that a trial court retains jurisdiction to cure a potential jurisdictional defect under subdivision (a)(1) of that statute. (*Jo Redland Trust*, at pp. 155–162.) On the record before us, we held that the trial court abused its discretion in denying a curative amendment. (*Id.* at pp. 161–169.) We adhere to that holding in this case.

In an apparent effort to argue their way around *Jo Redland Trust*, appellants repackage their position in the alternative and contend that "it is elementary . . . a nonexistent plaintiff has no standing to sue" under section 367. For this contention, they cite *Killian v. Millard* (1991) 228 Cal.App.3d 1601, where the court held that defendant Millard had no standing to seek invalidation on public policy grounds of an attorney fee syndication agreement the plaintiffs Killian and Van Atta were using as a litigation funding tool. Millard lacked standing to attack the agreement because he was not a party to it, the court held. (*Id.* at pp. 1605–1607.) *Killian* does not aid appellants here. Standing goes to the existence of a cause of action, not to a plaintiff's right to invoke the court's jurisdiction. (*Jo Redland Trust, supra,* 92 Cal.App.5th at p. 155.) Whether framed as a matter of standing or jurisdiction, the question in this case is whether the trial court had power to entertain a motion to cure the alleged pleading defect by amendment. *Jo Redland Trust* holds that it does.

Putting to one side for a moment the legal consequence of the pleading discrepancy at issue here (i.e., whether it deprived the trial court of jurisdiction *ab initio*), there is a long line of cases, referenced in *Oliver* itself (*Oliver, supra,* 222 Cal.App.2d at p. 537, fn. 7), involving plaintiffs who mistakenly pleaded the identity of a business entity defendant by the wrong name and the error was discovered long after the filing of the complaint, often after a statute of limitations deadline ran against the correctly

described defendant.  (See *Thompson v. Palmer Corp.* (1956) 138 Cal.App.2d 387.)[8]  In this situation, curative amendments were allowed under section 473 if it could be said that the error was nothing more than a "misnomer" correctible by a change in the description of the defendant (e.g., *Mayberry v. Coca Cola Bottling Co.* (1966) 244 Cal.App.2d 350, 352), but not if the correction required the addition of a party against whom, in substance, the original complaint stated no viable cause of action (e.g., *Milam v. Dickman Const. Co.* (1964) 229 Cal.App.2d 208, 210, 214).

This analysis applies in " 'wrong defendant' " as well as " 'wrong plaintiff' " cases.  (*Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468, 1470–1471; see *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19 (*Klopstock*).)  In both scenarios, " 'the allowance of amendment and relation back to avoid the statute of limitations does not depend on whether the parties are technically or substantially changed; rather the inquiry is as to whether the nature of the action is substantially changed.' " (*Diliberti*, at p. 1470.)  That was, in essence, our approach to the pleading error in *Jo Redland Trust*.  We held there that, given the viability of the plaintiff's claim as a legal matter and the absence of demonstrated prejudice to the defendant, the trial court abused its discretion in denying a curative amendment.  (*Jo Redland Trust, supra*, 92 Cal.App.5th at p. 168 ["So far as we can discern, the prejudice [to allowing an amendment] here was simply that the case had been pending for several years when Dupree sought leave to amend.  Absent some kind of disadvantage to MAM's defense linked to the passage of time—

---

[8] Drawing a contrast to this line of authority, the *Oliver* court acknowledged that "[t]he problem before us is not one of misnomer . . . ." (*Oliver, supra*, 222 Cal.App.2d at p. 537.)

such as faded memories or lost evidence—delay in and of itself was not a valid reason to deny amendment."].)

Arguing for a maximalist interpretation of *Oliver* that we squarely rejected in *Jo Redland Trust*, appellants ask us to hold that the rule we enunciated in *Jo Redland Trust* applies only in cases where the named plaintiff actually exists (the trust in that case was real, they say) and some other plaintiff should have filed suit instead (the issue there was that the trustee, not the trust, was the proper plaintiff). We reject this attempt to limit *Jo Redland Trust* to its facts. We also reject appellants' suggestion that cases prior to *Oliver* held that trial courts are powerless to cure pleading defects with potential jurisdictional consequences. For this idea, appellants rely upon *J. C. Peacock I*, *supra*, 184 Cal.App.2d 142, but fail to mention two related cases, *J. C. Peacock, Inc. v. Hasko* (1961) 196 Cal.App.2d 353 (*J. C. Peacock II)* and *J. C. Peacock, Inc. v. Hasko* (1961) 196 Cal.App.2d 363 (*J. C. Peacock III*), that arose from the same underlying litigation (the *J. C. Peacock* litigation).

Read together, *J. C. Peacock I*, *J. C. Peacock II*, and *J. C. Peacock III* fortify our holding in *Jo Redland Trust* and leave no doubt that appellants are mistaken in claiming the pleading discrepancy involved in this case is beyond repair. The *J. C. Peacock* litigation involved two lawsuits by an aircraft machine shop against a group of employees who allegedly skimmed profits and engaged in accounting fraud in an effort to obtain unearned bonuses for themselves. The common factual backdrop giving rise to both cases—which supplies important context to the issues decided in the three appeals—is most fully set forth in *J. C. Peacock II, supra,* 196 Cal.App.2d at

pages 354–357.[9]  The two lawsuits were consolidated for trial (*J. C. Peacock II*, *supra*, 196 Cal.App.2d at p. 354); separate judgments against the defendants were entered in each case (*J. C. Peacock II*, at p. 354; *J. C. Peacock III*, *supra*, 196 Cal.App.2d at p. 364); and the judgments were affirmed on appeal in *J. C. Peacock II* and *J. C. Peacock III* (*J. C. Peacock II*, at p. 362; *J. C. Peacock III*, at p. 371).  *J. C. Peacock I*—the opinion appellants rely upon—involved a discrete writ of attachment issue.  (*J. C. Peacock I*, *supra*, 184 Cal.App.2d at pp. 144, 148–149.)

The originally named plaintiff in the *J. C. Peacock* litigation was the corporate owner of the machine shop (J. C. Peacock Machine Co.), which purported to bring suit even though it no longer existed at the time the initial action was filed, having been merged into a successor corporation (J. C. Peacock, Inc.).  (*J. C. Peacock I*, *supra*, 184 Cal.App.2d at p. 144; *J. C. Peacock II*, *supra*, 196 Cal.App.2d at p. 355, fn. 3; *J. C. Peacock III*, *supra*, 196 Cal.App.2d at pp. 364–365.)  To secure liens against expected recovery at trial, "J. C. Peacock Machine Co." obtained pretrial writs of attachment (a writ of attachment and an alias writ of attachment) against property owned by the employee defendants and a related company.  (*J. C. Peacock I*, at p. 144.)  A surety, Hartford Accident and Indemnity Company, provided an attachment bond in favor of the misnamed plaintiff.  (*Ibid*.)  During trial, the court granted a motion permitting amendment of the complaint in the initial action, which was corrected at that point to name J. C. Peacock, Inc. as the plaintiff.  (*Id*. at pp. 146–147, 152.)

---

[9] The background recitation in *J. C. Peacock I* focuses almost exclusively on procedural events leading up to and through trial.

The appellate panel in *J. C. Peacock I* framed the pretrial attachment issue presented there as follows:  Whether "a corporation, the separate existence of which had ceased because of a merger, [can] initiate an action and cause defendants' . . . properties to be attached." (*J. C. Peacock I*, *supra*, 184 Cal.App.2d at p. 149.)  "It must be apparent that in effect there was no undertaking or bond," the court held.  (*Id*. at p. 152.)  "The undertaking signed by Hartford Accident and Indemnity Company went to J. C. Peacock Machine Company, a corporation, which did not exist." (*Ibid*.)  Reversing because there was no valid surety contract supporting the attachment, the panel concluded that the correctly named plaintiff could not avail itself of pretrial attachment remedies obtained in the name of its nonexistent corporate predecessor, despite having amended its complaint to correct the naming error midtrial.  (*Id*. at pp. 146–147, 154.)[10]

After winning this victory on the pretrial attachment issue, the employee defendants tried to leverage it into a bigger win on the merits in the third appeal by arguing that because J. C. Peacock Machine Company was a nonexistent entity when the suit was filed, the opinion in *J. C. Peacock I* dictated reversal of the judgment against them on jurisdictional grounds.  (*J. C. Peacock III*, *supra*, 196 Cal.App.2d at pp. 364–365.)  This attempt to transform a failure to observe the statutory requisites for

---

[10] Although the complaint was amended, conforming amendments were never made to the attachment and its supporting papers.  (See *J. C. Peacock I*, *supra*, 184 Cal.App.2d at p. 152 ["It may well be that the writs of attachment, the affidavit and the undertaking could have been amended by substituting the proper party and thereby Hartford could have determined whether to accept or reject the substituted party and whether to write the bond but this was not done."].)  It seems apparent that the *J. C. Peacock I* panel saw the correct identification of the bonded entity as material to the underwriting of the bond.

obtaining a pretrial attachment into a lack of fundamental jurisdiction failed. Emphasizing that since pretrial attachment is a harsh remedy, a rule of strict construction governs (*J. C. Peacock III*, at p. 365, citing *Barceloux v. Dow* (1959) 174 Cal.App.2d 170, 174), the *J. C. Peacock III* panel read its own prior decision narrowly. *J. C. Peacock I* was "limited to the sole issue there presented, namely, the validity of the writ of attachment[,]" the *J. C. Peacock III* panel explained. (*J. C. Peacock III*, at p. 365.) "The principal claim [by the appellants in *J. C. Peacock III* was] to the effect that the entire action is a complete nullity because it was originally filed under the name of J. C. Peacock Machine Company, which corporation had been merged with J. C. Peacock, Inc., prior to the filing of the action." (*J. C. Peacock III*, at p. 364.) About this argument—the same argument appellants make here— the panel was blunt. The opinion in *J. C. Peacock I* "by no means went that far . . . ." (*J. C. Peacock III*, at p. 365.)

The employee defendants in *J. C. Peacock III* nonetheless attempted to argue it was error to grant a section 473 motion allowing a curative amendment that substituted J. C. Peacock, Inc. into the case as the named plaintiff during the trial. (*J. C. Peacock III*, *supra,* 196 Cal.App.2d at pp. 366–368.) Citing *Klopstock*, *supra*, 17 Cal.2d 13, a leading "wrong plaintiff" amendment case decided in 1941 by the California Supreme Court, the *J. C. Peacock III* panel rejected this argument, too. Since "the ultimate beneficiary of the action is J. C. Peacock, Inc. on whose behalf the same relief is sought against the defendants," the *J. C. Peacock III* panel concluded, its substitution into the case "in no wise changed the cause of action" against the defendants. (*J. C. Peacock III*, at p. 369.) "[W]hat is most important," the panel said—just as we did in *Jo Redland Trust*—is that "the defendants . . . were given a full opportunity to make a defense." (*J. C. Peacock III*, at

15

p. 369.)  In a final comment that is just as apt in this case as it was there, the panel stated:  "[A]ppellants have read into [the *J. C. Peacock I*] opinion certain conclusions that simply are not there."  (*J. C. Peacock III*, at p. 366.)

The twist we have on the record before us, which is different from *Jo Redland Trust*, different from the typical misnomer case, and different from any of the appeals arising out of the *J. C. Peacock* litigation, is that the pleading discrepancy at issue in this case was brought to the attention of the trial court after entry of judgment.  We conclude that that makes no difference.  Appellants concede that "amendments after judgment are allowed . . . on an application for relief . . . after the judgment has been vacated" (*La Forge v. Groendyke* (1952) 108 Cal.App.2d 522, 525) or reversed (*Klopstock*, *supra*, 17 Cal.2d at pp. 15–16), but contend that a motion for relief under section 473, subdivision (b) must be filed within six months after judgment and therefore would be untimely in this case.  Section 473, subdivision (b), which confers authority to grant parties or their legal representatives relief from any "judgment, dismissal, order, or other proceeding taken against" them based on "mistake, inadvertence, surprise, or excusable neglect," is not the pertinent source of discretion.

The pertinent source of discretionary authority is section 473, subdivision (a)(1), which authorizes pleading amendments "in furtherance of justice, and on any terms as may be proper," subject to no specified time limit.  Where a defendant raises an issue of fundamental jurisdiction by vacatur motion filed after entry of judgment on the ground that there is a previously undiscovered pleading defect in the plaintiff's complaint—as appellants did here, when they pointed out the misdescription of respondents' pleaded state of domicile for the first time more than two years after the Eviction Judgments were entered—the plaintiff is entitled to respond by

16

seeking leave to cure the defect under section 473, subdivision (a)(1). The potential for gamesmanship we saw in *Jo Redland Trust*, an appeal that arose in a pretrial posture, is also of concern here, where the same issue is presented in a postjudgment setting.

Even assuming respondents had the right to seek postjudgment correction of a potential jurisdictional defect they created by incorrectly alleging their state of domicile, appellants insist they should not be allowed to amend their complaints because they deliberately passed up the chance to seek correction of the problem, arguing instead, in the trial court and before us as well, that this pleading discrepancy is too trivial to warrant judicial attention and should simply be ignored. The parties dispute whether respondents made any effort to seek leave to amend in response to appellants' voidness attack on the Eviction Judgments. Appellants contend no such effort was made; respondents, for their part, contend they tried to seek leave to make curative amendments, but by that time appellants had already filed their notices of appeal, which had shifted jurisdiction to this court, leaving the trial court powerless to act until these appeals were decided. Regardless of who is right and who is wrong about this issue—the record is unclear on the point—we believe the issue of whether curative amendments ought to be allowed under section 473, subdivision (a)(1) is for the trial court to decide in the first instance.

Accordingly, we will reverse the Denial of Vacatur Orders in both underlying unlawful detainer cases and remand with directions that the trial court (1) vacate the Eviction Judgments and the Enforcement Orders without prejudice to their possible reinstatement if respondents are able to cure the potential jurisdictional defects appellants have identified; and (2) entertain and decide any motion from respondents under section 473, subdivision (a)(1)

17

seeking to amend the complaints in these actions. Only if the pleading defects appellants have identified are not correctible will there be any need to consider procedural consequences under the nullity doctrine enunciated in *Oliver*. We emphasize that we take no position on whether the misdescription of respondents' state of domicile was an inadvertent error or whether section 473 relief is ultimately warranted here. Respondents will, of course, bear the burden of proof in support of any request for such relief.[11]

## C.

Although the issues raised in these three appeals largely overlap and the parties' briefs focus almost entirely on the issue of respondents' pleaded misdescription of their corporate state of domicile, we close with a brief discussion of two other questions raised in some of the appeals.

First, appellants Fell Street Clinic and Nasey argue in No. A171441 that, at the time the Eviction Judgments were entered in the Fell Street action, the summons and complaint in that action had not been served on them and that, as a result, the trial court lacked personal jurisdiction over

---

[11] It has not escaped our notice that, at least according to appellants, the Settlement Agreement, the Stipulations for Entry of Judgment, and the related documentation were riddled with a number of errors, of which the misdescription of respondents' state of corporate domicile in the unlawful detainer complaints was only one. As appellants correctly point out, the statutory procedures governing summary unlawful detainer proceedings must be followed strictly, with punctilious attention to detail. (See *Kwok v. Bergren* (1982) 130 Cal.App.3d 596, 600.) Whether and to what extent appellants' claim of sloppiness in the underlying contractual documents is true; whether the alleged errors are material, considered individually or cumulatively; whether appellants would suffer prejudice from the allowance of curative amendments to the unlawful detainer complaints; and whether any of the alleged errors, in the underlying contractual documents or in the operative pleadings, affects the availability of relief under section 473, subdivision (a)(1), are questions we leave to the trial court to address in the sound exercise of its discretion.

18

them.  This argument is meritless.  Without limiting the scope of their appearances, Fell Street Clinic and Nasey filed an opposition to respondents' motion to enforce the judgment entered in the Fell Street action, sought a stay of the judgment, and filed a motion to vacate the judgment.  In doing so, they made general appearances and thereby waived any prior defect of personal jurisdiction.

Second, appellants Nasey and Stanyan Street Clinic argue in Nos. A171442 and A171446 that, in the Enforcement Orders, the trial court exceeded its jurisdiction by authorizing the release to respondents of Nasey's $202,500 earnest money deposit.  According to appellants, this aspect of the Enforcement Orders is based on the trial court's determination that Nasey committed a breach of contract and is liable for $202,500 in liquidated damages for the breach.  They contend that summary eviction proceedings are strictly limited to the issue of possession; that the question of breach of contract for Nasey's failure to complete the purchase of the Properties in timely fashion is unrelated to possession; that they did not consent to have this breach of contract claim resolved summarily in an unlawful detainer proceeding; and that, even if they did consent, an award of $202,500 in liquidated damages violates public policy, as it is far out of proportion to the alleged breach.

Although none of these arguments was advanced in the trial court, we decline to hold that the earnest money issue appellants now raise was forfeited, as respondents ask us to do.  Rather, since we are reversing and remanding for consideration of whether respondents may make curative amendments to their unlawful detainer complaints, we will include in the scope of the remittitur consideration of appellants' arguments concerning Nasey's earnest money deposit.  Whether the release of the earnest money

19

deposit was a matter properly addressed in these unlawful detainer proceedings, and the parties' arguments relating to that issue, should be considered by the trial court in the first instance.

## DISPOSITION

The Denial of Vacatur Orders are reversed; the court is directed to vacate the Eviction Judgments and the Enforcement Orders without prejudice to possible reinstatement should respondents succeed in curing what appellants contend are jurisdictional defects in the unlawful detainer complaints; and in each appeal, the cause is remanded for (1) consideration of any motion respondents may wish to bring seeking to amend their pleadings pursuant to section 473, subdivision (a)(1), and (2) consideration of the arguments advanced in Nos. A171442 and A171446 that, to the extent the Enforcement Orders authorize the release to respondents of Nasey's $202,500 earnest money deposit, the trial court exceeded its jurisdiction. The parties are to bear their own costs on appeal.

                                        STREETER, J.

WE CONCUR:

BROWN, P. J.
SIMONDS, J.*

---

\* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

Trial Court:      Superior Court of California, City and County of San Francisco

Trial Judge:      Hon. Charles F. Haines

Counsel:          Draper Law Offices and Ann McFarland Draper, for Defendants and Appellants.

                  Seyfarth Shaw, M. Ryan Pinkston, for Plaintiffs and Respondents.

*1215 Fell SF Owner LLC v. Fell St. Automotive Clinic et al.* – A171441
*624 Stanyan SF Owner LLC v. Stanyan St. Automotive Clinic et al.* – A171442, A171446